Good morning, and may it please the Court, my name is Sarah Fearn, and I represent Olga Leza in this Social Security Disability case. I'll keep track of my own time, but I would like to try to reserve two minutes for rebuttal. At the center of this case is a single impairment. We have hypertension or high blood pressure. To the average person, this might be something that's just managed with medication or lifestyle changes, but for Ms. Leza, it had significant symptoms. Her doctors often referred to her as having uncontrolled symptomatic hypertension. So her case is different and falls under the disability guidelines here. There's two main issues on appeal, whether the ALJ provided proper reasons to reject the treating assessments, which we have three here. Cardiologist Dr. Gillette was first, then we have her primary care nurse practitioner, Vigil, second, and then last we have our most recent cardiologist, Dr. Morgan. So the first issue is whether the ALJ provided proper reasons to reject those treating opinions, and then the second issue is the credibility determination. I'd like to focus my time on the treating opinions, since there are three of them, and they are consistent pretty much across the board with each other. Can I ask you to help me understand what's really driving your client's inability to work, at least in terms of her testimony versus the physician's? Because I understand that there could be two things going on, and one of them is less supported, and maybe that's what the ALJ focused on. The less supported one seems to me to be your client's assertion that she needs to, I don't know, lie down, take a nap for, what is it, an hour and a half, twice a day. And that's what the vocational expert eventually says, well, my goodness, if you need to do that, yeah, you wouldn't be able to find a job. But the treating physician seemed to focus more on stress as potentially putting her health at risk, which is in and of itself a reason maybe that you wouldn't be able to work. But it seemed to me those were kind of distinct. And as I said, one may be more supported than the other. So can you just parse through that as you go through your argument here? Yes. Yes, your honor. Thank you. I think Dr. Gillette, which was the first cardiologist, looks at it both ways. At administrative record 510, I believe, he's saying that both stress and exertional activity would increase her symptoms and could cause hypertensive episodes where she's having chest pressure, palpitations, shortness of breath when she's walking, and then the fatigue issue as well. Okay. That's what I was not clear on. So Dr. Gillette says that her hypertension can lead to fatigue? Because that's exactly the opposite, of course, of what the state consulting examiner person says. He said categorically that under no circumstances would this kind of even uncontrolled hypertension lead to the fatigue symptoms that your client has attested to. Dr. Gillette points to it more as an increase in physical exertion leads to the symptoms. Dr. Morgan, her third cardiologist, is the one that mentions that the medications could possibly be causing the fatigue as well. So we're kind of having two factors here, actually three almost. Stress, physical exertion, and then medication side effects. That can all lead, according to Dr. Gillette and Morgan, to her main symptoms that keep her from functioning on a day-to-day basis. Okay. Okay. Yeah. All right. So we have three assessments that are pretty consistent across the board, and that's pretty important when we're looking at the importance of treating opinions through a claimant's disability period of time. I mentioned that each assessment is inconsistent with the ability to sustain work, and the ALJ himself acknowledged that at the hearing. But they're not overly restrictive, as the commissioner argued. Yes, they preclude work, but Dr. Gillette, Dr. Morgan, and nurse practitioner Vigil all opined that Lisa could still sit for up to three to four hours in an eight-hour day and stand and walk for two hours or less. This is not a dire conclusion or an excessive restriction. She still can't work, of course. That's why we're here for her disability claim, but it's not excessively restrictive. So that was one of the first reasons that the ALJ used to reject the treating opinions. Along that same line, the ALJ rejected the opinions because they were conclusory or lacked explanation. They are assessment forms, so they are a couple pages. But what's important and what our case law recognizes is that the treating relationship and the treating notes underpin the assessments for these providers. Here we've got three different providers that all saw her across the four, I think it's almost five-year period at issue. We have Dr. Gillette first, and he was really from the beginning, November 2014 through June of 2016. We have nurse practitioner that kind of spans the middle time. She's more March of 2015 to November 2016, and then we have Dr. Morgan wrapping it up at the end, seeing Lisa on a monthly basis from August of 2017 through 2018. We've got a very consistent record, all noting that she has uncontrolled hypertension and she's symptomatic, and that the course of treatment is not helping. She's got medication intolerances that are also limiting her ability to treat this impairment so that she can return to work. The fact that the judge rejected the assessments because they were excessive, conclusory, and lacked explanation is just not supported by this record. Not only do we have the treatment notes, but we also have narrative statements from Dr. Gillette and nurse practitioner vigil that provide additional support for the assessed limitations. Those are in the record at 859 through 60, 852 through 53, and 854 as well. The next main reason that the ALJ used to reject the treating assessments relates to the evidence itself. Here, the ALJ and the commissioner focused on normal examination findings. Her neck looked normal. Her thyroid was normal. Her strength was normal. She could walk normal. Yeah, but also, I mean, didn't they do whatever those tests they do to kind of check out your arteries and all that? It seemed to me the cardiac findings were also normal, weren't they? That's true, your honor. Her ejection fraction remained in the normal level. However, I believe it was Dr. Gillette that noticed that she does have preserved systolic function, which is that the ejection fraction remains above a certain percent. She doesn't have heart failure, if you will. She has chronic hypertension. So those two can stand alone. She can have chronic hypertension that is symptomatic, but she can also, her heart can still be functioning as in that it's not in heart failure, if that makes sense. The other test that the judge referenced, and additionally, the non-examining physician that the ALJ relied on referenced, were normal spine x-rays, normal abdominal ultrasound. I think the non-examining physician, in his one-page analysis, noted five blood pressure findings. So when we're comparing the explanation and the support for the treating assessments versus this person that's never even seen Ms. Liza, the evidence supports the treating assessments. The treating assessments are all consistent with each other, and Ms. Liza's testimony is consistent with what her doctors observed and noted about her course of treatment and inability to get the blood pressure under control, unfortunately. So the evidence that the ALJ and the commissioner relies on to show that, you know, her doctors are saying she's normal, her doctors are not saying she's normal. Her doctors consistently say that she has malignant hypertension that is difficult to treat and still causes symptoms. So the second reason the ALJ used to reject all the treating assessments related to the evidence is also not supported by substantial evidence. And I see I'm getting close to my minutes. If there aren't any further questions right now, I'd like to reserve the rest. Okay, yes. Very good. Let's hear from counsel for the commissioner. Good morning, your honors. Elizabeth Feer on behalf of Kilolo Kijikazi, the acting commissioner of Social Security. The ALJ rejected the treating source opinions in this case, and I'm just going to say that nurse practitioner vigil isn't technically a treating source under the regulations that were applicable at the time. But the ALJ did use all the same reasons to reject these opinions. So if one of the main reasons was that they were inconsistent with the treatment records. And my opponent has an issue with the fact that the ALJ relied on normal findings that theoretically weren't related to the opinions in question. But the fact that, I mean, if we take a big picture look at these records, we know she has high blood pressure. That's uncontested. But what are the symptoms in these treating records that would support limitations to less than sedentary work? We have very normal physical examination findings. We don't even have, you know, the doctors report intermittent chest pain. Okay, that was one of her alleged symptoms from the high blood pressure. But in my opponent's sites, 20 different records on page 8 of the opening brief, footnote 4, 10 out of those 20 records, the claimant didn't even report chest pain. So what is in these treatment records that supports the limitations to less than sedentary work? The ALJ reasonably found that there wasn't anything in those treatment records that supported it. You have your normal findings. You have, you know, especially the cardiac is related to it. But you don't have anything else in there. There aren't limitations. You know, no one's telling her to, you know, have bed rest or to lay down and elevate her feet or suggesting that she sees... Let me interrupt. I mean, I guess I just find that a those terms because we have a doctor who basically says, your life will be put at risk if you continue to work, right? I mean, this isn't somebody who just decides to quit her job one day and, you know, wants to lay around on the couch watching TV. She was, if I'm remembering, she was at work when she had that initial TIA incident. And that's what... That's not true. She was at home? She was, yes. Okay. Well, whatever, wherever she was, I mean, that was a serious, potentially life-threatening incident if that were, if something like that were to happen again. And her doctor opines that just the stress and the exertion that you have to put in, you know, at a full-time job would put you at risk for some very serious health outcomes, but possibly costing your life. So I guess I see in this record plenty to support the notion that she's not in a position to resume her job or really any job. So that's why I'm startled that you would say that there's basically nothing to suggest that she can't just go back to work tomorrow. Well, the only thing that that's based on is her subjective allegations. I mean, if she is repeatedly showing up and these doctors are noting that she's comfortable, she's in no acute distress, and I'm saying chronic condition, is repeatedly characterized as ill-appearing. That's not the case here. So, and I'll point out that also she had high blood pressure while she was working. There's at least a couple of records, one's at page 716 in the record and one's at 731, the June 2010, December 2011, where she has the same level of high blood pressure. So she had this incident in November 2014, and recovered from it. But there's not that much difference between the blood pressure findings before and after that. But you say she recovered from it, but that's not, I just don't see how you can say that, because what caused that condition was this chronic hypertension. And her doctor, and I would trust a cardiologist much more than my own views or your views on something like this, says, look, we've tried, what is it, 20 different medications, and none of these have controlled the situation. So the underlying condition that caused the TIA incident is still there. And that's why he's saying it's just not safe for you to go back to work. So she didn't recover from it, like, oh, now you're healed and you're fine, go back to work. The doctor is telling us that we haven't been able to figure out how to get your hypertension under control, and given that, it's not safe for you to return to work. Well, Your Honors, Dr. Gillette repeatedly says that her hypertension is probably related to sleep apnea and the anxiety. So she hasn't fully undergone treatment to get those two things under control. But there's also, I mean, we have to consider there are other doctors in this record who have looked at it. There was, in the beginning, there was Dr. Pidroi, I think his name is, who had the claimant's case in March 2015 in conjunction with long-term disability insurance. And that doctor, who I believe is a cardiologist, found that there was nothing in her treatment history that would preclude her from performing either sedentary or light work. Then we have the state agency physicians who, yes, they reviewed the record, but they are experts in disability analysis. They did look at evidence that is consistent throughout the record. My opponent's absolutely correct, this record is very consistent. So the fact that they didn't see everything else beyond November 2016, when the last doctor looked at the record, doesn't really make, it's not that material because the evidence is similar. But these doctors, who are medical doctors, who looked at it and said she could, the first one said, Dr. Weinberg said that the claimant was capable of performing a range of light work. And Dr. Weinberg specifically said, as I think Your Honor pointed to, that some of the symptoms could not be related to high blood pressure, but rather her obesity. And that's on page 75 in the record. And then you have Dr. Bellow, who looked at the record even later and decided that it was consistent with her being able to perform medium work. So whether or not we agree with any of that, and the ALJ obviously didn't agree with the medium, but these are doctors who are looking at this evidence and making objective findings based on her condition and what the treatment records show. And if these doctors could come up with very different conclusions, it's reasonable for the ALJ to have found that the treating source opinions were not supported. Substantial evidence, as we all know, is a relatively low standard. It's a reasonableness standard. So you or I could look at this record and decide it meant something else. But the fact that the ALJ cited these treatment records, which is consistent with some other doctors, as not being consistent with her condition overall, not being consistent with an inability to perform a range of light work, that's a reasonable conclusion this ALJ made on this record. Whether or not you agree with it, it's reasonable. And he's not the only person who came to that conclusion. We have, as I noticed, three other doctors. None of whom have ever seen this. That's true. Well, you know, it's a whole different thing to tell somebody to go back to work when they're not your patient. I mean, I understand Dr. Gillette's position. You know, her cardiologist who's treating her, trying to keep her alive, you're obviously going to be much more sensitive to the patient's needs in that setting than, you know, these other doctors are referring to. They're, you know, they're not on the hook if she goes back to work and has another incident and her health is seriously compromised. So I just don't see, this doesn't strike me as a case in which the ALJ can reasonably credit these doctors who've never seen her over the opinion of her long-term treating physician. I just don't, I mean, as weighing those two sets of opinions side by side, it seems to me that you would give the benefit of the doubt to the treating physician, wouldn't you? Well, you would obviously, but that's not the standard of supports the ALJ's reasoning. The fact that the treating records don't support the limitations, the fact that the doctors didn't explain their findings, and on page 1145 in the record, Dr. Morgan says the only explanation he gives is that her hypertension is very difficult to control. Well, we know that, but how does that support the additional limitations that he supports these? Well, and to your point about whether or not the treating sources would be more trustworthy, you know, your point that they would be, they would have sympathy that an objective doctor who's, you know, the state agency doctors have a job to do. They're not in the business of trying to, you know, have disability claimants perish. They are reasonably looking at a record and coming to reasonable conclusions based on their expertise. And both of, you know, Dr. Weinberg here explained his findings, you know, adequately and certainly enough to support the ALJ relying on that evidence as opposed to the treating sources who, again, didn't support their findings. I have to say, I have a frustration in this case and a lot of social security cases where we know that the regulations themselves weigh toward the treating physicians in favor of non-examining physicians. And indeed, I think our case law uses the phrase, can only reject by providing specific and legitimate reasons supported by substantial evidence. And I understand the pressures on ALJs to do their opinions, and I got lots of cases, and they always use the same language. It's very generally saying not supported by the treatment and the medical records, leaving it to us to try to go through the medical records. And of course, we don't understand what those say. But you started off by acknowledging she has this history of hypertension, and we have evidence that lots of different treatments were tried to bring that under control. Why isn't that by itself a reason for concern that justifies what the treating physicians have recommended? And I don't see anything in the examining physicians' statements that directly refute that, that say, yeah, hypertension doesn't matter, she can work just fine. Is that statement in there someplace that I can rely upon? And if it's not, then how do we have specific reasons to reject what the treating physicians say? Well, Your Honor, if you're going to say that the fact of the hypertension in and of itself supports a finding of disability, that's equating a diagnosis alone with disability, which is not appropriate under the Social Security Act. Oh, we know that hypertension can lead to things and causes, in this instance, for example, the episode that was discussed, why should we be confident that it's not going to happen when she goes to work? Well, the treatment records don't explain beyond the fact of the hypertension why she wouldn't be able to work. And as I noted, she's had hypertension prior to stopping work. So we're basically just saying she has hypertension, treating physicians say she can't work, that's it. That doesn't satisfy 423D that requires medical evidence, clinical and objective findings that support a finding of disability. You have the diagnosis of hypertension, you have labial hypertension, but you don't have evidence in those treatment records of significant limitations relating to those, or even significant sequelae relating to them. Because again, you have the normal cardiac functioning, you have normal pain findings most of the time. Of course, she reports intermittent chest pain, but that's not the same as saying someone can't, it's so limited by this hypertension that she can't perform a light job. And again, you have doctors who've looked at the same evidence, they're not treating sources, that's correct. But under several cases in this court's history, Gray, Ford, I think Molina also, that you can rely on non-treating sources if it's more consistent with the record overall. And the ALJ did that here. So I understand that any one of you could look at the record and interpret it differently. But you do have an ALJ here who reviewed this and provided reasons that are supported by your case law, not supported by the treatment records, cursory and not explained, and consistent with objective evidence overall. So even if you don't agree, the substantial evidence reasonableness standard should allow you to uphold the ALJ's findings here. Okay. And if you... Yeah, no, I think you're well over your time. Thank you for your argument. Counsel, you have some time for rebuttal. Thank you, Your Honor. I just want to touch on a couple of brief points that the commissioner made. First, that the physical findings don't show that she's in acute distress and how that would be, in the ALJ's opinion, inconsistent. We have three or four ER visits in this record where she had acute episodes of hypertension that led to significant increase in symptoms that resulted her going to be treated and even hospitalized. So not finding acute distress on each treatment visit, even when she has high blood pressure, is not substantial evidence to invalidate the three treating opinions. Second, the commissioner pointed to the fact that Dr. Gillette and possibly even Dr. Morgan pointed to other potential causes of her uncontrolled blood pressure, including sleep apnea or anxiety. And the commissioner mentioned that Lisa hasn't tried to do anything about those things, so that's not supported by this record. The treatment records note that she tried a CPAP machine multiple times and it caused sinus infections. She's also tried dental devices, I guess, to try to adjust to different CPAP machines. This is in the record at 854 and 859. She also tried anxiety medication at one of the times that she was treated in the ER and it didn't actually help bring her blood pressure down. So in no way has Lisa been non-compliant or not tried other avenues and efforts to address her high blood pressure. I know I'm getting close. If Judge Watford would indulge me, I just have one question for you. Yes. What is the relief you're seeking and the basis for it? Thank you, Your Honor. We are seeking to have the ALJ decision vacated and this matter be remanded for a calculation of benefits, payment of benefits here. We have three consistent treating assessments that the ALJ himself acknowledged would preclude work. We also have the vocational expert concluding that Ms. Lisa's testimony was inconsistent with the ability to sustain work. So under garrison, we would ask that you credit the assessments as true, credit her symptom testimony as true, and remand for payment of benefits. Okay. Thank you. Okay. Thank you very much. The case just argued is submitted.
judges: PAEZ, CLIFTON, WATFORD